**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**FORT MYERS DIVISION**

**VERLON B. DENNEY**, an individual,

Plaintiff,

v.

**LEE COUNTY R.V. SALES COMPANY**, a Florida corporation,

Defendant.

**CIVIL ACTION**

**Case No. 2:26-cv-2865**

**Judge:**

**Mag. Judge:**

## COMPLAINT AND DEMAND FOR JURY TRIAL

NOW COMES the Plaintiff, VERLON B. DENNEY ("DENNEY" or "Plaintiff"), by and through undersigned counsel, and states the following for his Complaint:

## CAUSES OF ACTION

1. This is an action brought under the Family & Medical Leave Act (FMLA), Americans with Disabilities Act (ADA), Florida Civil Rights Act (FCRA), and Florida common law for (1) retaliation in violation of the FMLA, (2) disability discrimination in violation of the ADA, (3) disability discrimination in violation of the FCRA, (4) retaliation in violation of the ADA, (5) retaliation in violation of the FCRA, and (6) breach of contract.

## PARTIES

2. The Plaintiff, VERLON B. DENNEY ("DENNEY"), is an individual and a resident of Cape Coral, Lee County, Florida, who at all material times was employed by the Defendant.

3. Defendant, LEE COUNTY R.V. SALES COMPANY ("Defendant"), is a Florida corporation with its principal place of business at 5270 Orange River Blvd., Fort Myers, Florida 33905, and employed DENNEY.

4. At all material times, the Defendant employed more than fifty (50) employees within seventy-five (75) miles of DENNEY's worksite, and approximately 205 employees in total.

## JURISDICTION AND VENUE

5. This Court has jurisdiction of this matter under 28 U.S.C. §1331.

6. This Court has supplemental jurisdiction over DENNEY's state law claims pursuant to 28 U.S.C. §1367, because those claims form part of the same case or controversy as his federal claims.

7. Venue is proper in the United States District Court for the Middle District of Florida because the Plaintiff worked for the Defendant in Lee County, and the Defendant conducts business in, and some or all of the events giving rise to Plaintiff's claims occurred in, Lee County, Florida, which is within the Middle District of Florida. Venue is proper in the Fort Myers Division since Lee County is within the Fort Myers Division.

8. DENNEY timely filed his Charge of Discrimination (Charge No. 510-2026-06320) against the Defendant with the U.S. Equal Employment Opportunity Commission (EEOC), dual-filed with the Florida Commission on Human Relations. The EEOC issued its Notice of Right to Sue on August 5, 2026, and DENNEY received it that same day. This action is timely filed within ninety (90) days of his receipt of the Notice of Right to Sue. (See Exhibit 1, EEOC Notice of Right to Sue.)

## GENERAL ALLEGATIONS

9. DENNEY began his employment with the Defendant on or about March 1, 2022, and was employed full-time in a sales position.

10. DENNEY's compensation consisted of commissions, including split commissions on shared transactions, a weekly draw of $500.00 against commissions, and an annual year-end bonus.

11. DENNEY always performed his assigned duties in a professional manner and was very well qualified for his position.

12. DENNEY consistently performed his job at satisfactory or above-satisfactory levels throughout his employment and received generally favorable annual performance reviews.

13. DENNEY is a qualified individual with a disability. In 2018, DENNEY sustained lower back injuries in a motor vehicle accident. In August 2025, his lower back symptoms began recurring and worsening, requiring

medical evaluation and treatment. His diagnosed conditions include degenerative disc disease involving the lumbar spine, lumbar disc bulging with radiculopathy, and facet arthropathy. In addition to his lower back impairments, DENNEY suffered from left foot tarsal tunnel syndrome and plantar fasciitis, which further affected his mobility. These medical conditions substantially limited his ability to walk, stand, sit for extended periods, and perform other major life activities. The Defendant was aware of DENNEY's medical condition and resulting limitations during his employment.

14. DENNEY's impairments substantially limit major life activities, including but not limited to walking, standing, sitting, bending, lifting, sleeping, and working, as well as the operation of his musculoskeletal and neurological functions.

15. Although DENNEY originally sustained lower back injuries in a 2018 motor vehicle accident, his symptoms began recurring and worsening in August 2025. The progression of his condition required further medical evaluation and treatment and resulted in substantial limitations affecting his ability to perform major life activities, including walking, standing, sitting, bending, lifting, and working. These impairments constitute a disability within the meaning of the ADA and Florida Civil Rights Act.

16. In or about August 2025, because of his disability and serious health condition, DENNEY requested and was approved for FMLA leave. After

his FMLA entitlement was exhausted, DENNEY remained on approved medical leave, including short-term disability leave, with the Defendant's knowledge and approval, continuously through March 9, 2026. Taking approved medical leave did not end DENNEY's employment. From August 2025 through March 9, 2026, DENNEY remained an employee of the Defendant. During that time the Defendant did not terminate, separate, or resign him, and it did not change his status from active employee to former employee.

17. Throughout his leave, DENNEY's treating physicians provided the Defendant with medical documentation confirming that he remained under treatment and had not been released to return to work, and DENNEY kept the Defendant informed of his medical condition and leave status. Throughout his leave, the Defendant also treated DENNEY as a current employee. It kept him enrolled in its employer-sponsored health insurance and billed him for his premiums. Its Human Resources department corresponded with him about his leave and benefits. It kept him assigned a company-issued cell phone number and company email account. In December 2025, it paid him a split commission.

18. While DENNEY remained on approved medical leave, the Defendant's Human Resources representative Moira Mackenzie repeatedly contacted him by email requesting information about his anticipated return-to-work date. Despite receiving medical documentation confirming that

DENNEY remained unable to work, Mackenzie continued requesting updates about his return. On December 2, 2025, DENNEY also spoke with Sales Manager Ryan Holland and explained that he was medically unable to return to work. That same day, DENNEY's medical provider informed him that his employer had contacted the medical office attempting to obtain a release for light-duty work. DENNEY's physician had not cleared him to return to work, and no such medical release was issued. These repeated communications placed additional pressure on DENNEY while he was undergoing medical treatment.

19. Before taking medical leave, DENNEY was responsible for paying for his company-issued cell phone. However, when DENNEY began his approved medical leave in August 2025, Mackenzie verbally informed him that his only financial responsibility during his medical leave would be his health insurance premiums. Relying on this representation, DENNEY discontinued payments toward his company-issued cell phone. On November 10, 2025, Human Resources communicated with DENNEY in writing about his responsibility for health insurance coverage while on leave. On January 6, 2026, Mackenzie unexpectedly demanded $183.00 in retroactive company cell phone charges dating back to October 2025, in addition to $201.68 for health insurance. DENNEY had not previously been informed that he remained responsible for company cell phone charges during his approved medical leave.

20. On January 2, 2026, DENNEY contacted his sales partner, Matt Padilla, who confirmed that he had received his annual year-end bonus in his December 31, 2025, paycheck.

21. On January 5, 2026, Sales Manager Ryan Holland informed DENNEY that, even though DENNEY was a current employee, he would not receive his earned annual year-end bonus because he was "not actively working." When the Defendant issued the year-end bonuses in the December 31, 2025, payroll, DENNEY was a current employee of the Defendant. He was absent from work only because he was on approved medical leave. Being on approved medical leave did not make DENNEY a former employee or disqualify him from receiving a year-end bonus.

22. On January 23, 2026, at approximately 7:42 a.m., while DENNEY remained employed and on approved medical leave, John Wicks, an employee of the Defendant, attempted to redirect DENNEY's company-issued cell phone number to Wicks's company-issued phone through Verizon call forwarding. DENNEY received notification of the attempted forwarding and had not authorized it. Verizon later confirmed that a call-forwarding request had been initiated but was not completed. The attempted forwarding could have redirected DENNEY's customer communications and business opportunities while he remained employed by the Defendant.

23. On or about January 23, 2026, while DENNEY remained employed and on approved medical leave, the Defendant disabled DENNEY's access to his company email account without prior notice.

24. Beginning on January 27, 2026, the Defendant's Human Resources department communicated with DENNEY only through his personal email. On February 11, 2026, DENNEY emailed Ryan Hurrell, the Defendant's head of IT, about the removal of his company email access. DENNEY received no response.

25. Under the Defendant's pay plan and established commission practice, when one salesperson referred a customer to another salesperson, the commission on the resulting sale was split between the two. The split commission was payable to the referring salesperson as long as he or she was a current employee of the Defendant. The Defendant's pay plan did not require a salesperson to be "actively working," as opposed to employed, to receive a split commission or an annual year-end bonus. It did not bar employees on approved medical leave from receiving either. The Defendant applied this practice to DENNEY while he was on leave. On November 8, 2025, while DENNEY was already on approved medical leave, he participated in a split transaction with Padilla involving customer Daniel Lund. On December 4, 2025, while DENNEY remained on medical leave, the Defendant paid him his share of that split commission without objection.

26. On January 19, 2026, DENNEY's previous customer, Paul Deaton, contacted DENNEY about a 2022 King Aire motorhome. Because DENNEY was on medical leave, he referred Deaton to Padilla.

27. On January 22, 2026, Deaton confirmed that he was working with Padilla. On February 23, 2026, Deaton confirmed that he had purchased the King Aire motorhome.

28. Padilla entered the King Aire transaction as a split commission and asked John Wicks to add DENNEY's name to the transaction because the customer originated with DENNEY. Wicks refused to include DENNEY's name.

29. DENNEY emailed Wicks about the King Aire commission on February 24 and February 26, 2026. DENNEY received no response.

30. On March 3, 2026, Derek Marks told DENNEY by telephone that he would not receive the lucrative King Aire split commission because he was "not actively working" at the time of delivery. DENNEY explained that he remained employed by the Defendant and was on approved medical leave. When the King Aire sale was completed and delivered in February 2026, and when Marks denied the commission on March 3, 2026, DENNEY was a current employee of the Defendant. Before then, the Defendant had not applied any "actively working" requirement to DENNEY's split commissions while he was

on leave. It invoked that requirement for the first time to deny him the King Aire commission.

31. DENNEY sent Marks follow-up emails about the commission on March 4 and March 5, 2026. DENNEY received no response.

32. DENNEY made repeated good-faith attempts to resolve the denial of his earned compensation internally, including by contacting Wicks and Marks. His emails went unanswered. Rather than correct its discriminatory and retaliatory treatment, the Defendant continued it.

33. On February 25, 2026, DENNEY submitted updated medical documentation to the Defendant confirming that he remained under medical treatment and had not been released to return to work.

34. On Monday, March 9, 2026, while DENNEY was still on approved medical leave, Marks informed DENNEY that the Defendant was terminating his employment, effective that day. The Defendant asserted that there was no foreseeable return-to-work date and that no reasonable accommodation was available. The Defendant reached that conclusion without engaging in any meaningful interactive process with DENNEY. Until March 9, 2026, DENNEY was a current employee of the Defendant. That includes the dates on which the Defendant paid year-end bonuses to other sales staff, denied DENNEY's bonus, completed the King Aire sale, and denied DENNEY's King Aire split commission.

35. At all material times, the Defendant was aware of DENNEY's disability, his medical leave, and his complaints about the denial of his earned compensation. These are the bases for its discriminatory and retaliatory employment practices toward him.

## COUNT I - VIOLATION OF THE FAMILY & MEDICAL LEAVE ACT ("FMLA") – RETALIATION

36. Plaintiff incorporates by reference Paragraphs 1-35 of this Complaint as though fully set forth below.

37. DENNEY was an eligible employee under the FMLA. He had worked for the Defendant for more than twelve (12) months and more than 1,250 hours in the twelve (12) months before his leave, and the Defendant was a covered employer.

38. DENNEY qualified for FMLA leave because he suffered from a serious health condition: lumbar spine impairments and related conditions requiring continuing treatment by a health care provider. The FMLA defines a serious health condition as an illness, injury, impairment, or physical or mental condition that involves continuing treatment by a health care provider.

39. DENNEY informed the Defendant of his need for leave due to his serious health condition in or about August 2025, and his FMLA leave was approved.

40. DENNEY engaged in activity protected by the FMLA when he requested and took approved FMLA leave due to his serious health condition.

41. The Defendant knew that DENNEY was exercising his rights under the FMLA.

42. DENNEY complied with all of the notice and due diligence requirements of the FMLA.

43. A causal connection exists between DENNEY's taking of FMLA-protected leave and the Defendant's adverse employment actions against him.

44. Because DENNEY took FMLA-protected leave, the Defendant retaliated against him by repeatedly pressing him to return to work, attempting to obtain a light-duty release from his medical provider, demanding retroactive company cell phone charges after telling him he would not owe them, denying his earned year-end bonus and King Aire split commission, disabling his company email access, and attempting to redirect his company phone number.

45. The Defendant justified denying DENNEY's earned compensation by stating that he was "not actively working," a rationale based directly on his absence for protected medical leave, including the FMLA leave that began his period of absence.

46. The Defendant then terminated DENNEY's employment on March 9, 2026, further demonstrating the retaliatory nature of its conduct.

47. As a result of the above-described violations of the FMLA, DENNEY has been damaged by the Defendant in the nature of lost wages, commissions, bonuses, employment benefits, and other compensation, and is therefore entitled to recover actual monetary losses, interest at the prevailing rate, and liquidated damages.

WHEREFORE, Plaintiff requests trial by jury of all issues so triable as of right, an award of damages for lost wages and benefits, prejudgment interest, and liquidated damages under 29 U.S.C. § 2617(a)(1)(A), reinstatement or such other legal or equitable relief as may be appropriate, an award of reasonable attorney's fees and costs as authorized under 29 U.S.C. § 2617(a)(3), and any other such damages as this honorable Court deems just.

## COUNT II - VIOLATION OF THE AMERICANS WITH DISABILITIES ACT, AS AMENDED

48. The Plaintiff hereby incorporates by reference Paragraphs 1-35 in this Count as though fully set forth below.

49. At all relevant times, DENNEY was an individual with a disability within the meaning of the ADAAA.

50. Specifically, DENNEY has physical impairments that substantially limit one or more major life activities, has a record of the impairments, and is regarded by the Defendant as having such impairments.

51. DENNEY is a qualified individual with a disability as that term is defined in the ADAAA.

52. At all material times, DENNEY was an employee and the Defendant was his employer, covered by and within the meaning of the ADAAA.

53. DENNEY is an individual who, with or without reasonable accommodation, could perform the essential functions of his job with the Defendant at all relevant times.

54. The Defendant was made aware and was aware of DENNEY's disability, which qualifies under the ADAAA.

55. The Defendant discriminated against DENNEY with respect to the terms, conditions, and privileges of employment because of his disability. This included denying his earned bonus and commission on the stated basis that he was "not actively working," disabling his company email access, and terminating his employment.

56. The Defendant acted with malice or with reckless indifference to DENNEY's federally protected rights.

57. The Defendant discriminated against DENNEY in violation of the ADAAA by interfering with his enjoyment of all benefits, privileges, terms, and conditions of his employment.

58. The Defendant's conduct altered the terms and conditions of DENNEY's employment, and DENNEY suffered adverse employment actions, including the denial of earned compensation and termination.

59. As a direct and proximate result of the violations of the ADAAA referenced and cited herein, DENNEY has lost all of the benefits and privileges of his employment and has been substantially and significantly injured in the career path he anticipated from his employment.

60. As a direct and proximate result of the violations of the ADAAA referenced and cited herein, and of the prohibited acts perpetrated against him, DENNEY is entitled to all relief necessary to make him whole.

61. As a direct and proximate result of the Defendant's actions, DENNEY has suffered damages, including but not limited to loss of employment opportunities, loss of past and future employment income and fringe benefits, humiliation, and non-economic damages for physical injuries and mental and emotional distress.

62. DENNEY has exhausted his administrative remedies, and this count was timely brought.

WHEREFORE, Plaintiff requests trial by jury of all issues so triable as of right, and:

i. Back pay and all other benefits, perquisites, and other compensation for employment which Plaintiff would have received had he maintained his

position with the Defendant, plus interest, including but not limited to lost commissions and bonuses;

ii. Front pay, including benefits, insurance costs, benefits costs, and retirement benefits;

iii. Reimbursement of all expenses and financial losses Plaintiff has incurred as a result of the Defendant's actions;

iv. Reasonable attorney's fees plus costs;

v. Compensatory damages;

vi. Punitive damages; and

vii. Such other relief as this Court shall deem appropriate.

**COUNT III - VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT - DISABILITY DISCRIMINATION**

63. The Plaintiff hereby incorporates by reference Paragraphs 1-35 in this Count as though fully set forth below.

64. At all relevant times, DENNEY was an individual with a disability within the meaning of the FCRA.

65. Specifically, DENNEY has physical impairments that substantially limit one or more major life activities, has a record of the impairments, and is regarded by the Defendant as having such impairments.

66. DENNEY is a qualified individual with a disability as that term is defined in the FCRA.

67. DENNEY is an individual who, with or without reasonable accommodation, could perform the essential functions of his job with the Defendant at all relevant times.

68. At all material times, DENNEY was an employee and the Defendant was his employer, covered by and within the meaning of the FCRA.

69. The Defendant was made aware and was aware of DENNEY's disability, which qualifies under the FCRA.

70. The Defendant discriminated against DENNEY with respect to the terms, conditions, and privileges of employment because of his disability.

71. The Defendant acted with malice or with reckless indifference to DENNEY's protected rights under Florida law.

72. The Defendant discriminated against DENNEY in violation of the FCRA by interfering with his enjoyment of all benefits, privileges, terms, and conditions of his employment.

73. The Defendant's conduct altered the terms and conditions of DENNEY's employment, and DENNEY suffered adverse employment actions, including the denial of earned compensation and termination.

74. As a direct and proximate result of the violations of the FCRA referenced and cited herein, DENNEY has lost all of the benefits and privileges of his employment and has been substantially and significantly injured in the career path he anticipated from his employment.

75. As a direct and proximate result of the violations of the FCRA referenced and cited herein, and of the prohibited acts perpetrated against him, DENNEY is entitled to all relief necessary to make him whole.

76. As a direct and proximate result of the Defendant's actions, DENNEY has suffered damages, including but not limited to loss of employment opportunities, loss of past and future employment income and fringe benefits, humiliation, and non-economic damages for physical injuries and mental and emotional distress.

77. DENNEY has exhausted his administrative remedies, and this count was timely brought.

WHEREFORE, Plaintiff requests trial by jury of all issues so triable as of right, and:

i. Back pay and all other benefits, perquisites, and other compensation for employment which Plaintiff would have received had he maintained his position with the Defendant, plus interest, including but not limited to lost commissions and bonuses;

ii. Front pay, including benefits, insurance costs, benefits costs, and retirement benefits;

iii. Reimbursement of all expenses and financial losses Plaintiff has incurred as a result of the Defendant's actions;

iv. Reasonable attorney's fees plus costs;

v. Compensatory damages;

vi. Punitive damages; and

vii. Such other relief as this Court shall deem appropriate.

**COUNT IV - VIOLATION OF THE ADA - RETALIATION**

78. Plaintiff incorporates by reference Paragraphs 1-35 of this Complaint as though fully set forth below.

79. DENNEY engaged in protected activity under the ADA when he requested and took medically necessary leave as a reasonable accommodation for his disability, and when he objected to the Defendant's denial of his earned compensation because of his medical leave status.

80. Following this protected activity, the Defendant retaliated by altering the terms and conditions of his employment, denying his earned bonus and split commission, disabling his company email access, and ultimately terminating him on March 9, 2026.

81. This protected activity was the proximate cause of the Defendant's adverse employment actions against DENNEY, including termination.

82. Instead of ceasing its disparate treatment based on disability, the Defendant retaliated against DENNEY by terminating him.

83. The acts, failures to act, practices, and policies of the Defendant set forth above constitute retaliation in violation of the ADA.

84. As a direct and proximate result of the violations of the ADA referenced and cited herein, DENNEY has lost all of the benefits and privileges of his employment and has been substantially and significantly injured in his career path.

85. As a direct and proximate result of the violations of the ADA referenced and cited herein, and of the prohibited acts perpetrated against him, DENNEY is entitled to all relief necessary to make him whole as provided for under the ADA.

86. As a direct and proximate result of the Defendant's actions, DENNEY has suffered damages, including but not limited to loss of employment opportunities, loss of past and future employment income and fringe benefits, humiliation, and non-economic damages for physical injuries and mental and emotional distress.

87. DENNEY has exhausted his administrative remedies, and this count is timely brought.

WHEREFORE, Plaintiff requests trial by jury of all issues so triable as of right, and:

i. Back pay and all other benefits, perquisites, and other compensation for employment which Plaintiff would have received had he maintained his position with the Defendant, plus interest, including but not limited to lost commissions and bonuses;

ii. Front pay, including raises, benefits, insurance costs, benefits costs, and retirement benefits;

iii. Reimbursement of all expenses and financial losses Plaintiff has incurred as a result of the Defendant's actions;

iv. Reasonable attorney's fees plus costs;

v. Compensatory damages;

vi. Punitive damages; and

vii. Such other relief as this Court shall deem appropriate.

**COUNT V - VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT OF 1992 – RETALIATION**

88. Plaintiff incorporates by reference Paragraphs 1-35 of this Complaint as though fully set forth below.

89. DENNEY engaged in protected activity under the FCRA when he requested and took medically necessary leave as a reasonable accommodation for his disability, and when he objected to the Defendant's denial of his earned compensation because of his medical leave status.

90. Following this protected activity, the Defendant retaliated by altering the terms and conditions of his employment, denying his earned bonus and split commission, disabling his company email access, and ultimately terminating him on March 9, 2026.

91. This protected activity was the proximate cause of the Defendant's adverse employment actions against DENNEY, including termination.

92. Instead of ceasing its disparate treatment based on disability, the Defendant retaliated against DENNEY by terminating him.

93. The acts, failures to act, practices, and policies of the Defendant set forth above constitute retaliation in violation of the FCRA.

94. As a direct and proximate result of the violations of the FCRA referenced and cited herein, DENNEY has lost all of the benefits and privileges of his employment and has been substantially and significantly injured in his career path.

95. As a direct and proximate result of the violations of the FCRA referenced and cited herein, and of the prohibited acts perpetrated against him, DENNEY is entitled to all relief necessary to make him whole as provided for under the FCRA.

96. As a direct and proximate result of the Defendant's actions, DENNEY has suffered damages, including but not limited to loss of employment opportunities, loss of past and future employment income and fringe benefits, humiliation, and non-economic damages for physical injuries and mental and emotional distress.

97. DENNEY has exhausted his administrative remedies, and this count is timely brought.

WHEREFORE, Plaintiff requests trial by jury of all issues so triable as of right, and:

i. Back pay and all other benefits, perquisites, and other compensation for employment which Plaintiff would have received had he maintained his position with the Defendant, plus interest, including but not limited to lost commissions and bonuses;

ii. Front pay, including raises, benefits, insurance costs, benefits costs, and retirement benefits;

iii. Reimbursement of all expenses and financial losses Plaintiff has incurred as a result of the Defendant's actions;

iv. Reasonable attorney's fees plus costs;

v. Compensatory damages;

vi. Punitive damages; and

vii. Such other relief as this Court shall deem appropriate.

## COUNT VI - BREACH OF CONTRACT

98. Plaintiff incorporates by reference Paragraphs 1-3, 5-7, 9-12, 16-17, 20-21, and 25-34 of this Complaint as though fully set forth below.

99. DENNEY and the Defendant entered into a valid and enforceable compensation agreement. Under it, in exchange for DENNEY's sales services, the Defendant agreed to pay him (a) commissions on vehicles he sold; (b) split commissions on transactions he shared with another salesperson, including

sales to customers he originated and referred to another salesperson, under the Defendant's established commission practices; (c) a weekly draw of $500.00 against commissions; and (d) an annual year-end bonus. Under the compensation agreement, DENNEY's right to split commissions and the annual year-end bonus depended on his being a current employee of the Defendant. It did not depend on his being "actively working," and the agreement did not exclude employees on approved medical leave.

100. The Defendant's own conduct confirms the terms of the compensation agreement. On December 4, 2025, while DENNEY was on approved medical leave, the Defendant paid DENNEY his share of the split commission on the November 8, 2025, Daniel Lund transaction. Under the same practice, DENNEY was entitled to a share of the King Aire split commission.

101. DENNEY fully performed his obligations under the compensation agreement, or was excused from performing them, including by originating the customer relationship with Paul Deaton that resulted in the King Aire motorhome sale and by meeting the criteria for the 2025 annual year-end bonus.

102. The compensation agreement did not condition DENNEY's right to earned commissions or his annual bonus on his being "actively working," as opposed to employed, at the time of payment or delivery. DENNEY was a

current employee of the Defendant until his termination on March 9, 2026. Each payment at issue came due while he was employed. The year-end bonus was paid to other sales staff on December 31, 2025. The King Aire sale was completed and delivered in or about February 2026.

103. The Defendant materially breached the compensation agreement by:

a. refusing to pay DENNEY his earned 2025 annual year-end bonus of approximately $900.00, which the Defendant paid to other sales staff, including Padilla, in their December 31, 2025, paychecks, while DENNEY was a current employee;

b. refusing to pay DENNEY his share of the split commission on the King Aire motorhome sale completed in or about February 2026, while DENNEY was a current employee; and

c. refusing to pay any other commissions, splits, or compensation earned by DENNEY and due to him under the agreement, in amounts to be determined.

104. DENNEY repeatedly demanded payment of the amounts due, including by emails to Wicks on February 24 and 26, 2026, and to Marks on March 4 and 5, 2026. The Defendant failed and refused to pay.

105. As a direct and proximate result of the Defendant's breach, DENNEY has suffered damages, including the unpaid bonus, unpaid commissions, and other compensation owed under the agreement.

106. The amounts due are unpaid wages, and DENNEY is entitled to recover his reasonable attorney's fees and costs under Section 448.08, Florida Statutes.

107. DENNEY has retained the undersigned counsel and is obligated to pay a reasonable fee for their services.

WHEREFORE, Plaintiff requests trial by jury of all issues so triable as of right, and judgment against the Defendant for:

i. Compensatory damages for all unpaid commissions, split commissions, bonuses, and other compensation due under the compensation agreement;

ii. Prejudgment and post-judgment interest;

iii. Reasonable attorney's fees and costs pursuant to Section 448.08, Florida Statutes; and

iv. Such other relief as this Court shall deem appropriate.

**DEMAND FOR JURY TRIAL**

Pursuant to Fed. R. Civ. P. 38(b) and the Seventh Amendment to the United States Constitution, the Plaintiff demands a trial by jury as to all issues triable as of right.

Respectfully submitted,

Dated: October 20, 2026

**/s/ Benjamin H. Yormak**
Benjamin H. Yormak
Florida Bar Number 71272
Lead Counsel for Plaintiff
YORMAK EMPLOYMENT & DISABILITY LAW
27200 Riverview Center Blvd., Suite 109
Bonita Springs, Florida 34134
Telephone: (239) 985-9691
Fax: (239) 288-2534
Email: byormak@yormaklaw.com